Good afternoon, your honors. May it please the court? Gene Vorobyev on behalf of the appellant. My client's appeal presents two issues, but there is a single error behind both of them. The trial court took my client's forerunner waiver without informing him that he faced a functional sentence of life without the possibility of parole. The sentencing information in this case was misstated in a number of ways, the most significant of which is the fact that my client wasn't told that he would have to serve a maximum 57-year determinant term before he ever gets to start serving any of the indeterminate term counts. So he would have to live to be 89 in prison before even a single indeterminate term begins. That alone makes it a non-survivable sentence. The trial court didn't give my client this information, he didn't waive counsel with his eyes open as the Supreme Court requires, and his writ should be granted. He was told that he faced a punishment of 15 to life per count and there were multiple counts. He wasn't told that it was asked to each count. Well, what does per count mean then? He's told one count for each victim would be 15 to life per count. That's what was told to him in court, and there's multiple counts. So, I don't understand how you would view that other than that you would have to add together 15 plus 15 plus 15 plus 15 for each of the counts. Well, under California law, 15 to life is not what you would normally think of as a life sentence. What it means is that you would see a parole board after you serve the minimum term prescribed by statute, which is in this case was 15 years, as reduced by the conduct rates, which in this case were limited to 15 percent. So strictly speaking, 15 to life means that your first date with a parole board is after 13 plus years. In fact, my client would have never lived to see the parole board under his sentence. So I think that's a material misstatement. Does that, did that answer your question? Well, I understand your argument. I guess it doesn't really answer it because he is told that he has, I mean it sounds even worse than it is if he could be going to a parole board after 13, but he's told it's 15 to life per count. Sounds pretty long. Right. It's, I would concede that what the trial court described was a potentially a long sentence, but one that would give a 32 year old man a reasonable shot at least at seeing a parole board. In fact, he would never see a parole board. He wouldn't live long enough to see a parole board, even if he just gets one 15 to life count, which frankly, if that wasn't even accurate, either it's 35, it should have been 35 to life. But, and it's, that's all described in the briefing. But I think that the fact that there is a determinant term that must be served first is the most significant problem because he's never going to live that. So whether it's 15 or 35, of course, this court has required mathematical accuracy in giving the defendant this information before he waives counsel. That's Forrester, that's Erskine, and that's certainly consistent with the Supreme Court stating that you have to be given information about the allowable range of punishment. That's not only Tovar, but also Von Molke versus Gillis. I have one other question and that is if we review under the AEDPA standard, your burden to demonstrate that the state court was wrong is very high because we have a great deal of deference that we owe to the state court. So, what is, is there a different standard of review? And if so, why? Well, our position is that there is a different standard to review on the ineffective assistance of counsel claim because the state court never decided that on the merits. So I think you should be applying de novo to claim three, which is an effective assistance of appellate counsel. And if the court agrees that counsel wasn't effective, that would also cure the procedural default as to claim one and the court would apply de novo to that because that was decided on the merits either. So I think it's de novo review on both claims. Also, even if this court were to disagree and apply AEDPA, I think you should come out the same because the Supreme Court has required that you'd be given accurate information about the allowable range of punishment and this has, it hasn't happened here. My client isn't told that he's facing a sentence where number one, he's never getting out of prison and number two, he's never even receiving parole board before he dies. So even if you apply AEDPA, I frankly, I don't see how it could or how it should come out the same. Does the court have any other questions? I have one. If we agree with you and determine that this decision was not in the merits, don't we have to find that, have to determine whether or not the decision was based on adequate and independent state grounds and not a strict de novo review? Well, no, because the state has waived any procedural default by not asserting that in the district court in its answer and in fact insisting that this was a merits decision. So if you agree with us that it's not a merits decision, the state has waived that defense.  Is there authority for that, that that constitutes a waiver? Yeah, Ocampo versus Vail is the most recent decision, also Franklin versus Johnson. And if it would be helpful to the court, I can submit a 28-J letter with a precise site. Counsel, I just have one question. As to your contention that this was a procedural ruling and not a merits-based ruling, is there anywhere else I should look other than this written order that I've got, excerpt 33 regarding the credit claim? I believe it's excerpts of record 34 to 35. That's the ruling. The other ones were silent denial or there's no explanation. So that's where you would look. How can it be a procedural violation when the the judge looked through the record and found that the the court was unable to find a, that a constitutional violation occurred? Because the state court decision didn't, didn't resolve the intrinsic rights and wrongs of the party in this case, which is whether the Faretto waiver was valid and or whether counsel, counsel was ineffective for raising it and whether the error was prejudicial. Those are the intrinsic disputes that the state court didn't rule on those. He did, the court, for example, didn't say the advising was correct or counsel was right. But the judge did go to the prejudice prong. He's basically said that your client hasn't shown enough facts to demonstrate that there, that there would have been a different result had these things been raised. And so why isn't that a substantive prejudice ruling? Well, because the court never, even though the court uses the language from the prejudice prong, it never actually resolves, I believe, that factually whether the error was prejudicial. I think this was, this all came down to the fact that my client didn't attach the transcript that described what the advisements were. And I would say that a lot of California procedural defaults describe the default in terms of failure to stay a prima facie case. This looks most likely like a default under People v. Duval, maybe Swain, even though both of those sort of masquerades as denials based on failing to stay the prima facie case, it's in reality, it's a procedural default, frankly, just failure to exhaust, which even if it was pursued, this court has jurisdiction to overlook that. Or in the case of Duval, the court could just determine whether or not the claim was fairly presented to the state court to give it an opportunity to rule on the merits. But again, the state has never raised the procedural default as a defense. They have waived it at this point. You have about a minute left. I would love to resolve, unless the court has other questions. Thank you. May it please the court. My name is Catherine Nieto, and I represent the respondent in this case. I'd like to start out with a quote from Iowa v. Tovar by the United States Supreme Court. The court explained that the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully and fully understands the nature of the right and how it would likely apply in general in the circumstances, even though the defendant may not know the specific detailed consequences of invoking it. And then the court goes on to say in Tovar, or the court goes on to emphasize that in a collateral attack such as this, it is the defendant's burden to prove that he did not competently and intelligently waive his right to assistance of counsel. In this case, I'd like to point out what defendant said in his declaration when he made the claim that he did not knowingly waive his right to counsel. And this is from the excerpts of record at page 66. He said, when I made my FREDA motion, I understood that I was facing a sentence of 15 years to life on the count alleging sexual abuse of my daughter and an additional few years for having allegedly raped my live-in girlfriend. However, I was never advised of the maximum sentence that I was facing if convicted on all counts and possible enhancements. I'd like to contrast that with the actual words of the hearing. And this was the first hearing. The court, in the presence of the prosecutor and the defendant, said, he asked the prosecutor, he said, he says, what is Mr. Galzinski's maximum exposure? And the prosecutor replied, she said, Your Honor, this case has multiple victim enhancements due to the child molestations committed against his minor daughter as well as adult sexual assault charges on his cohabitant girlfriend, which makes it a potential on one count for each victim would be 15 to life per count and there's multiple counts. And then the judge asked Mr. Galzinski, he said, did you hear a misguessing statement, the prosecutor? And Mr. Galzinski replied, yes, I did. The court says, do you understand that? And Mr. Galzinski replied, I absolutely do. And this was a week before. At this point, the judge denied his motion to represent himself because it was untimely. He had another week to think about this, if he had questions to come up with questions, if he had any sort of confusion. And I think the other point that is really different from other cases where a defendant seeks to waive counsel, this is a situation where the defendant sat through a month-long trial with a very experienced, privately retained attorney and there were 31 counts. So that's a huge amount of liability that he was facing, huge. Although that case didn't get to sentencing, it was a hung jury. Correct, correct. There is that. What should I make of or should I be concerned about the form that the trial court judge used, the box that wasn't checked? Should I be concerned about that? No, I think you have to look at the totality of the circumstances. And so I don't think that that would make this annoying or involuntary. I think that the circumstances really showed that Mr. Golzinski really, he thought he could represent himself. He sat through the trial before. He felt like he had already seen the prosecutor's case. He already knew the arguments that the prosecutor was going to be making. He had been quite successful in that first trial. He had had 30 of the 31 counts were hung, so I think he felt quite confident. If a judge is informing you, the prosecutor in front of the judge is saying, you know, you are facing 15 to life on multiple counts, I don't know that it gets much worse than that. And so I think that he really did know that he was facing a significant punishment. And I think the Supreme Court has been, the decision especially in Iowa versus Tovar says, you know, we can't require specific detailed advisements, probably particularly on a complicated sentence. But the important point is we need to make sure that, hey, you know, you know, you're looking at long term here and multiple life sentences. You know, you think about the crime of murder. And to me, that seems like, you know, the most severe crime you could get. And if someone knows that that's a life sentence, but here you're facing multiple life sentences. I don't think there's a material difference between that and. Well, they're not necessarily life sentences. There's something less than that, 15 to life per count. So I still think when you hear the term life, you know, if you don't have a lot of experience, you think that's pretty long. And here, multiple life sentences. I, I can't imagine thinking that you would believe you would be able to really get out, you know, if you're facing multiple life sentences. Of course, at the time the advisement is given, it's it's not known how many counts he'd be convicted of. And in fact, at that time, there were 31 counts. By the time he went to retrial, there were significantly fewer. I think 19. Correct. Still a lot of counts. Yes. But opposing counsel's point, I think, is that what he wasn't told is that if only convicted on one of those counts, it would be a significant number of years before you'd ever see a parole board. So the first thing I didn't see in your brief is whether or not it's your position that you're disagreeing with that math, if you will. And my second question is whether we've ever said that a person needs to be informed of that eligibility for parole. Right. I don't disagree with the math. And but I do think that I've never seen that specific requirement. In fact, I think that the Supreme Court is concerned about invite advising some of the worst case scenario and the perils of self-representation. And that, you know, what is his maximum exposure? I believe that that was done here. And his sentence, in fact, involved multiple life terms. That's what he got. He ended up getting exactly what they told him he would get. You can't believe how many life terms he got. You know, that was really what he was looking at. So I think that especially in this case where we had someone that had gone through trial already. You know, he really did understand what he was looking at. And then with respect to the determination of whether or not the state court decision was on the merits. It's black letter California state law that in order to prevail on a petition for habeas corpus, you have to state with particular particularity that the facts. And you have to support him with the documentation. You can't just make conclusory allegations. And in this case, the petitioner made the assertion that his waiver was not knowing involuntary, but he didn't provide the court with the full record. And then the other problem was that he didn't provide a declaration that was signed by him. In fact, the declaration that he was. Well, is that a procedural problem or is that a substantive decision then? It's a substantive decision under California state law. It's a merits determination. And that's in Ray Robbins. So it's almost as if you would be. It's a failure of proof. And so in this case, the court found that, you know, he had not met his burden of pleading facts, which, if true, would entitle him to relief. And so, therefore, it was a denial on the merits and that is entitled to deference. And so we would ask that the court would affirm the judgment on that basis. Thank you, Counsel. Mr. Vorobiev, you have about a minute. I have two points. Number one, to respond to Judge Christian's question, 15 to life in California is not a life sentence. The Supreme Court may not have specifically said that you must advise about parole eligibility, but the Supreme Court has said that you have to give accurate information regarding the range of punishment. So you're waiving counsel with eyes open. So I think it is significant information that you have at least some chance of seeing a parole board at some chance at release. The court may not have to mathematically calculate it, but yet there is a difference between a sentence that gives you at least a chance to see a parole board and one where you're going to spend the rest of your life in prison. The court never said you're going to spend the rest of your life in prison, regardless of mathematical errors. Nor could the court have done that, of course. At that point, he hadn't been convicted of anything. But the maximum punishment, which I think this is what the Supreme Court requires, you have to be given the maximum accurate information about maximum accurate punishment. So the court should have said that. But the maximum for one count was life, wasn't it? No, it was 15 to life, which under California law is not technically a life sentence. But it could be. It could be. Actually, it's at parole board's discretion, at least theoretically. The court has to release you unless they find that you present an unreasonable risk of danger to public safety. Now, how that plays out in an individual case, who knows. But it's not a life without possibility of parole. And your other point? And my other point is that it's not, in terms of whether this was a procedural default versus a merit ruling, it's not a failure of proof because there was never an evidentiary hearing. The court basically said what you alleged doesn't meet the prima facie case. That's exactly like Duval. So that was my point. Thank you very much. Thank you very much. The case just argued is submitted. We appreciate the arguments of both counsel.
judges: Tunheim, Graber, Christen